## MARTIN M. COLLINS
*vs.*
## CITY NATIONAL BANK AND TRUST CO.

Superior Court      Fairfield County      File No. 65240

MEMORANDUM FILED MAY 18, 1943.

*John J. Hunt,* of Bridgeport, for the Plaintiff.

*Leonard McMahon,* of Danbury, for the Defendant.

MURPHY, J.   Martin M. Collins, of Danbury, while employed by the Motor Vehicle Department of Connecticut as an inspector on the testing lanes, was stationed in Canaan for two weeks in May, 1942, and during that time deposited the receipts from the testing lane in the Canaan National Bank. On May 16th he wrote to the City National Bank and Trust Company of Danbury that he desired to open a personal checking account and enclosed checks and cash amounting to $203.62.   The letter was signed "Martin M. Collins."   In reply the defendant acknowledged receipt of the money and stated that it was opening a checking account in his name.   It enclosed a signature card and asked that Collins sign and return it to the bank for its files.   By separate mail, check book and deposit slips were being sent to him.   Collins did not send in the signature card as he had ascertained that the testing lanes were to be closed down and he wanted a permanent address before doing so.

On May 26th, Collins wrote a check to cash for $3.62 which he cashed at the Canaan National Bank on the following day.   The Canaan bank sent the check to its clearing house in New York which forwarded it to the defendant for payment.   On May 29th, the defendant's bookkeeping department received the check and when the maker's name was not recognized one of the employees called out "Martin M. Collins.   Who is that?"   The head bookkeeper asked the clerk in charge of the files if there was such an account and was told there was none.   The head bookkeeper then looked for a signature card.   Finding none, a "no account" slip was attached to the check and it was returned through the clearing house to the Canaan bank.   At the time, there was in the account trays an account in the name of Martin M. Collins and if the clerk had referred to them instead of trusting to

memory, its existence would have been disclosed. The bank also had the letter of May 16th bearing Collins' signature. On June 3rd, when the check came back to Canaan the teller who cashed it complained to the State Police at Canaan and asked them to ascertain Collins' address from the Motor Vehicle Department on the teletype by which the departments were connected. Instead of doing so, the police obtained the check and then a warrant for Collins, charging him with violating section 6368 of the General Statutes, Revision of 1930 (obtaining money by false pretenses).

Collins left Canaan on May 29th to look for other employment and obtained a room in Danbury, where he had been born in 1887, and in which he had lived most of his life. He was in the taxi business for four years before going into the Army in World War I, and after his discharge operated a garage for 16 years. He worked on the testing lanes for about two years prior to the time they were closed at the end of May, 1942. He bore an excellent reputation.

On May 29th he cashed a check for $5 at the Hotel Green in Danbury which was drawn on the same account and was honored by the defendant on June 2nd when Collins appeared at the defendant bank to close out his account. He disclosed that there was a $3.62 check outstanding. His check for $195 to close the account was paid. On June 3rd he went to Stamford to find employment and on the way stopped at the Ridgefield barracks of the State Police to get a letter of reference from the lieutenant in charge. Collins was a member of the State Police Auxiliary, having attended the State Police schools in Bethel and Litchfield. As the lieutenant was out of town, he disclosed his mission to the officer on duty and was to get in touch with the lieutenant on his return. About 5:00 p.m. he again stopped at the Ridgefield barracks and was advised to wait for the lieutenant who was at dinner.

While waiting, a State Police officer approached and asked if he was Martin M. Collins. Receiving an affirmative answer he asked if Collins had cashed the check in Canaan. Told "yes" he then asked if Collins had an account in the defendant bank. Collins said "not now" because he had closed it out the day before. After some further dialogue the officer said that he had a warrant for Collins' arrest as the check had been returned marked "no account." Collins cautioned him against serving the warrant. Some acrimony

ensued and the officer then took Collins in a State Police car to Canaan where he was put in a cell without being asked for bail. He was fingerprinted. About 10:00 p.m. he furnished $100 cash bond and was obliged to appear in court the following afternoon. He had to obtain such accommodations as he could in Canaan at that hour and spent a very restless night. He was discharged in court as the State Police had by that time checked with the defendant and found that the check was good.

The police officer had contacted the Danbury police looking for Collins before his arrest and had inquired for him in several different places from people who knew him.

Collins' fingerprints were returned to him several weeks later upon his demand and after one set came back from Washington where they had been filed with the Federal Bureau of Investigation. Collins claimed restraint of his liberty, humiliation, mortification and injury to his feelings, reputation and credit. The complaint alleged negligence of the defendant in failure to honor the check.

The jury awarded the plaintiff $2,000 damages.

The defendant maintained that until the signature card was returned to it, it was not obligated to honor the check. The jury, by its general verdict, found that a contract existed between the parties and it was the duty of the bank to honor the check. Failure to refer to the account files instead of relying on memory was negligence.

Whether such negligence was a proximate cause of the plaintiff's arrest and detention poses another question. Were the acts of the Canaan teller and State Police intervening causes? Under the rule laid down in Lombardi vs. Wallad, 98 Conn. 510, 517, and reiterated in Cuneo vs. Connecticut Co., 124 id. 647, 651, 652, proximate cause was a question of fact for the jury and it could reasonably find the original act a substantial factor in causing the injury.

For every wrong there is a remedy commensurate in degree with the injury inflicted. Upon the evidence, the action of the Canaan bank and its teller in complaining to the State Police was justified. The State Police were hasty in obtaining the warrant, but as their information indicated the commission of a crime their conduct was defensible. Who then would be responsible if not the defendant?

Was the award excessive? Who can measure with exactitude the humiliation and mortification of one who is unjustly arrested and locked up? Who can figure out to the exact dollar the damage in dollars and cents to one who feels as he walks down the streets of his home town that the eyes of passers-by look questioningly in his direction? Is a man entitled to pride in his reputation? What is reasonable compensation for one who feels degrated and humiliated by his experiences and who has been subjected to the indignity of arrest and confinement for the first time in his life?

It is an intangible upon which the determination of the jury is entitled to great weight. The amount of the verdict may have been generous but is not of such an amount as to be unconscionable.

The motion to set aside the verdict is denied.