[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE DEFENDANT'S (COUNTERCLAIM-PLAINTIFF'S) SPECIAL DEFENSES, COUNTERCLAIM AND REQUEST FOR RELIEF
On or about November 3, 1986, the defendant, Catherine Mandel, executed an Adjustable Rate Note in favor of the plaintiff, People's Bank, in the amount of $100,000.00. To secure said Note, the defendant mortgaged to the plaintiff a certain piece of or parcel of land with buildings thereon, known as Unit 9N, Embassy Towers Condominium, located in the City of Bridgeport, and State of Connecticut. The defendant was represented by Attorney Irving B. Rappaport at the closing on the above transactions.
CT Page 9401 Subsequent to that date, the defendant defaulted on the Note and the plaintiff has brought this action to foreclose its Mortgage. This action was made returnable on January 28, 1992 to the Judicial District of Fairfield at Bridgeport. On March 5, 1992 the plaintiff moved to default the defendant Catherine Mandel for her failure to plead. On or about March 19, 1992 (12 days after the Motion for Default) the defendant (Catherine Mandel) through counsel, submitted an Answer, Special Defenses, Counterclaim and Request for Relief dated March 19, 1992. The plaintiff moved to strike defendant Catherine Mandel's Special Defenses, Counterclaim and request for Relief dated March 19, 1992. At a hearing held May 8, 1992, the Court entertained the plaintiff's Motion to Strike the above-referenced pleadings dated March 19, 1992. On May 13, 1992, this court granted plaintiff's Motion to Strike defendant's Special Defenses, Counterclaim and Request for Relief. The defendant filed substitute pleadings dated May 29, 1992. The plaintiff now moves to strike defendant's Special Defenses, Counterclaim and Request for Relief dated May 29, 1992.
The First Special Defense dated May 29, 1992 is a verbatim repetition of the First Special Defense dated March 19, 1992, which was stricken, as legally insufficient and defective by the Court on May 13, 1992. Having plead this defense after it was stricken is sufficient cause to grant plaintiff's motion for sanctions dated June 12, 1992. Defendant's objection to said motion is overruled and the plaintiff is awarded an attorney's fee of $375.00.
The defendant Catherine Mandel's Second Special Offense is legally insufficient in that it fails to allege facts which show plaintiff (counterclaim-defendant) had a duty to disclose certain facts to the defendant, Catherine Mandel. "`[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular defendant[.]" Prosser, Law of Torts at 324 (4th ed. 1971). The defendant's Second Special Defense, without alleging any facts which establish a particular duty to disclose, does allege that the plaintiff failed to disclose facts regarding the economic status of the City of Bridgeport.
The facts, which plaintiff allegedly failed to disclose, were, if true, easily ascertainable by the defendant. The defendant cannot, without alleging facts which establish a duty owed by the plaintiff to the defendant, change the nature of the CT Page 9402 relationship between the plaintiff and defendant. Without alleging facts which establish a duty owed to the defendant, the plaintiff cannot have breached a duty.
In addition, it is "the anticipation" that harm of the general nature of the harm complained of would be likely to result, which gives rise to a duty. See, Wright, Connecticut Law of Torts, (2d ed. 1968). The bald statement of a conclusion that there is a duty to disclose information is not a legally sufficient pleading.
Admitting the facts alleged for the purpose of this motion, the said defendant has not sufficiently established a duty of the nature claimed, between the plaintiff and defendant.
Therefore, the defendant's Second Special Defense, is legally insufficient and defective.
The defendant, Catherine Mandel, states in her Second Special Defense that the plaintiff failed to disclose information concerning the City of Bridgeport and that such information would have resulted in the defendant not entering the Note and Mortgage. If the plaintiff had in fact acted in the manner allegedly "required" by the defendant, the plaintiff could have been acting in violation of public policy as stated in Federal banking law. More specifically, the plaintiff could have violated the public policy findings as stated at12 USCA Sections 2801 and 2901.
The Federal banking law states, in pertinent part:
 (a) The Congress finds that some depository institutions have sometimes contributed to the decline of certain geographic areas by their failure pursuant to their chartering responsibilities to provide adequate home financing to qualified applicants on reasonable terms and conditions.
 (b) The purpose of this chapter is . . . to determine whether depository institutions are filling their obligations to serve the housing needs of the communities and neighborhoods in which they are located[.]
CT Page 940312 U.S.C.A. Section 2801 (West 1989). In addition, Congress has stated, and codified, the proposition that banking institutions have an obligation to provide credit services in the communities in which they are located:
(a) The Congress finds that —
 (1) regulated financial institutions are required by law to demonstrate that their deposit facilities serve the convenience and needs of the communities in which they are charted to do business . . . .
 (2) regulated financial institution have continuing and affirmative obligation to help meet the credit needs of the local communities in which they are charted.
12 U.S.C.A. Section 2901 (West 1989).
These statutes were enacted by Congress to protect certain geographical areas from discriminatory lending practices by financial institutions. The defendant's Second Special Defense is therefore legally insufficient in that it attempts to set up a defense by claiming the plaintiff failed to breach Federal law.
In addition to being legally insufficient for the reasons set forth above, the defendant's Special Defense attempts to impose the job of investment advisor on the plaintiff. The plaintiff, in this transaction, was acting in the capacity of lending institution not that of investment advisor.
The transaction, as set forth in the complaint, is that of mortgagor and mortgagee, or lender and borrower. The defendant has failed to allege any facts which would establish an investment/advisory duty. Without facts which establish such a duty, the pleading is legally insufficient and defective.
Thus, the defendant's Second Special Defense is legally insufficient and defective and therefore the court strikes Defendant Catherine Mandel's, Second Special Defense.
The defendant (counterclaim-plaintiff) alleges in her Counterclaim that the plaintiff (counterclaim-defendant) failed CT Page 9404 to disclose to the defendant (counterclaim-plaintiff) the allegedly poor financial condition of the City of Bridgeport thereby harming the defendant (counterclaim-plaintiff); that the plaintiff (counterclaim-defendant) failed to disclose that a variable rate Note and Mortgage would result in payments higher than that of fixed rate Note and Mortgage, thus, causing harm to the counterclaim-plaintiff; and, that said actions constituted a violation of Conn. Gen. Stat. 42-110b (CUTPA). The defendant (counterclaim-plaintiff) has made a Request Relief based on these allegations.
The First Count of the defendant's (counterclaim-plaintiff's) counterclaim fails to state a cause of action for which relief can be granted. The First Count of defendant's (counterclaim-plaintiff's) Counterclaim appears to sound in negligence. As discussed above, there can be no negligence unless there is a duty established. The Connecticut Court has defined negligence as the breach of a duty. See, Collins v. City National Bank and Trust Co. of Danbury, 131 Conn. 167, 170 (1944). Unless the defendant (counterclaim-plaintiff) alleges facts which show the plaintiff (counterclaim-defendant) had a duty to disclose, there can be no negligence. In addition, the disclosure sought (or allegedly required) by the defendant (counterclaim-plaintiff) could not have been made by the plaintiff because the City was not in "economic distress" at the time of the transaction. Without a duty there can be no negligence. Thus, the First Count of the Counterclaim is legally insufficient as it fails to state a cause of action, upon which relief clan be granted.
The First Count also, inter alia, claims that the plaintiff (counterclaim-defendant) should have behaved in manner which could violate Federal law. Public Policy statutes, such as the Community Reinvestment Act, and the Federal Home Loan Disclosure Act, have dictated that a lending institution cannot discriminate against certain geographical areas by refusing to do business. See, 12 U.S.C. § 2801, 2901 (quoted above). The Counterclaim thus infers that the counterclaim-defendant failed to breach federal law.
The allegations contained in the First Count are, thus not sufficient to state a cause of action for which the Court can grant relief. The First Count of the Counterclaim is stricken as legally insufficient and defective.
The Second Count of the Counterclaim is also legally insufficient and defective for the reason that the Second Count sounds in negligence and fails to allege facts that show CT Page 9405 counterclaim-defendant is obligated to act as the counterclaim-plaintiff's investment advisor in a lending transaction. The counterclaim-defendant is a lending institution, not an investment advisory firm.
The Note is explicit in how the adjustable rate calculations are made. In addition, the Amendment to the Note set forth the calculations which applied in the transaction at issue. Both the Note and the Amendment thereto indicate that the defendant (counterclaim-plaintiff), Catherine Mandel, had read and understood the terms of the Note. Throughout the transaction, the defendant (counterclaim-plaintiff) was represented by independent counsel, as is evidenced by the Note and Amendment thereto. The plaintiff, without showing that the plaintiff (counterclaim-defendant) had an obligation to act in a manner, other than as a lending institution, has failed to state a cause of action for which relief can be granted.
Finally, the Third Count of the Counterclaim alleges a violation of the Connecticut Unfair Trade Practices Act. This allegation is legally insufficient and defective for the reason that Conn. Gen. Stat. 42-110b does not apply to banking transactions.
Connecticut General Statutes 42-110c(a)(1) provides:
 Nothing in this chapter shall apply to (1) Transactions or actions other wise permitted under law as administered by any regulatory board or officer acting under statutory authority of the State or of the United States.
The plaintiff (counterclaim-defendant) is a banking institution organized and existing under the laws of the State of Connecticut. The transactions it is permitted to enter are determined and regulated under the auspices of the Commissioner of Banking of the State of Connecticut as well as Federal regulations under Title 12 of the United States Code. Thus, within the plain meaning of Section 42-110c(a)(1), the transactions of the plaintiff (counterclaim-defendant) are outside the scope of 42-110b.
Thus, the Third Count of the Plaintiff's Complaint fails to state a cause of action for which relief can be granted. It is CT Page 9406 therefore legally insufficient and is stricken.
As the foregoing shows, the defendant (counterclaim-plaintiff) has failed (in each count) to state a cause of action for which relief can be granted. Pursuant to Practice Book 152 the legal sufficiency of the Counterclaim has been challenged and shown to be legally insufficient. Without showing a cause of action in the Counterclaim, the defendant (counterclaim-plaintiff) cannot obtain the relief requested. Wherefore, this Court strikes the defendant's (counterclaim-plaintiff's) Request for Relief.
STODOLINK, JUDGE